[No. 16957.  Department One.  April 5, 1922.]

## S. H. COHEN, *Respondent,* v. R. S. ROBINSON, *Appellant.*[1]

PRINCIPAL AND AGENT (19, 21)—MUTUAL RIGHTS AND LIABILITIES—ESTOPPEL—NEGLIGENCE OF AGENT—RATIFICATION—WAIVER OF CLAIM AGAINST AGENT. There is an implied ratification by the principal of the acts of his agent in purchasing furs contrary to instructions when the principal himself takes control of the furs and disposes of them in a distant market; and any claim against the agent for loss sustained in the transaction is waived by the principal's failure, until a suit is started against him for the recovery of unpaid salary, to advise his agent that the furs had been sold at a loss or that he had any intention of holding the agent responsible for such loss.

APPEAL (452)—REVIEW—HARMLESS ERROR—ERRORS NOT AFFECTING TRIAL DE NOVO. Error in receiving evidence on an issue not pleaded is harmless where the same result is reached by considering the evidence not objected to.

Appeal from a judgment of the superior court for King county, French, J., entered August 24, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*George H. King* and *M. H. Van Nuys,* for appellant.
*Philip Tworoger,* for respondent.

MITCHELL, J.—For a number of years the defendant, a fur dealer of Winnipeg, Canada, employed the plaintiff as his agent in Seattle for the buying of furs. On February 5, 1921, this action was commenced to recover for the agent's unpaid salary from May 15, 1920, to October 15, 1920. In his answer the defendant denied the agency for the period mentioned and, among other things, affirmatively set up a counterclaim for

[1]Reported in 205 Pac. 838.

damages, in that in March, 1920, contrary to instructions, plaintiff, as agent purchased certain furs on which the defendant sustained a loss. This was denied by a reply. On the trial of the case the defendant admitted the agency and salary for the period covered by the complaint, and that it had not been paid; whereupon the case was tried, without a jury, on the counterclaim. From findings, conclusions and judgment against the defendant, he has appealed.

The only loss claimed to have been sustained was on 722 muskrat skins included in the purchase. It appears that, on March 15, 1920, appellant, by wire, directed his agent not to buy any more furs without instructions. Contrary thereto, the agent agreed to buy a quantity of furs from a Seattle dealer on or about March 23, 1920. On March 26, the agent paid for the goods, telegraphed that he had made the purchase, and wrote to the appellant, enclosing the invoice of the goods purchased, stating that he could not resist buying, as he thought it a good buy and that he tried to get an option to purchase, but could not do so. On the next day, March 27, he received a night letter from the appellant saying he did not want the goods, that he, the agent, had bought them against instructions, and to cancel the deal. On that day, answering the night letter, the respondent wrote to the appellant saying he was sorry about the matter, and further stated,

"I didn't cancel the deal, as I had already paid him yesterday, even I hadn't have paid Woodruff I wouldn't have canceled anyhow because that would queer us from doing business. I am leaving the goods with Woodruff and told him to try and get us a little profit, he has another 300 rats a little better than ours he wants $3.00 each. I am satisfied that the 722 rats were bought about 15% cheaper than Tacoma sale. Another reason prompted me to buy those rats was, I

was informed around town that rats is holding up well and I was afraid of losing the chance so I closed the deal.''

Upon receipt of this letter appellant, on March 31, telegraphed that the furs be shipped to Winnipeg. They were promptly shipped as ordered. On that same day, March 31, 1920, the appellant wrote to the respondent, among other things, as follows:

''I am rather surprised, after you found you couldn't cancel Woodruff's deal, or didn't care to do so that you held the goods back without any instructions to do so  .  .  .   If in your opinion there was a possibility of selling the goods favorably at Seattle, it appears to me the first thing you should have done was to wire asking me whether such action would meet with my views  .  .  .'';
and further in the same letter, as follows: ''I will advise you just as soon as I am open for any more goods which I hope will be in about thirty days. Meantime, if anything really special turns up, you can submit it to me, but in no case buy anything at any price without submitting.''

After receipt of the goods in Winnipeg, the appellant held them until October, 1920, and sold them at a loss, which he now seeks to recover from his agent. While it is quite true, because of the character of the agency, the appellant was bound to stay by the contract of purchase, it is significant that, so far as any liability of the agent was concerned, there never was any claim or suggestion by the appellant that he would hold the agent responsible for any loss, although the agency continued for six or seven months thereafter. Upon learning that the agent, because of the night letter to cancel the order, had instructed the dealer in Seattle from whom the goods were purchased to sell them at a profit, the appellant ordered them shipped to Winnipeg. That, of course, he had the right to do because they were his

goods, but it is worthy of consideration in connection with appellant's conduct indicating implied ratification, or rather waiver, of any claim against the agent in case any loss was suffered. For the same purpose, it is to be noticed that other furs in the same purchase were in no way accounted for or subsequently mentioned by the appellant. If sold at a profit he kept it and seeks to charge the loss on the rat skins to his agent. On selling the rat skins in October, 1920, he did not then advise the respondent of his loss, nor at any time or in any manner claim or pretend any liability against the respondent until his answer in this law suit, which was verified by him on May 2, 1921—more than a year after the transaction, and more than six months after he knew what his loss was.

There is in the case no claim of fraud on the part of the agent, nor anything other than good faith on his part in making the purchase. Unquestionably, he thought, although disobeying instructions, that he was making a good deal for his principal, and while that would not absolve him from liability, yet we think the conduct of the appellant, upon learning all the facts, including his long silence as to any responsibility of the respondent, broken only in the law suit against him, does relieve the agent. Some contention is made that the respondent is not permitted to rely upon the doctrine of ratification, as it was not plead; but let that be as it may, we have considered in reaching our conclusion only the testimony introduced by the appellant, together with a portion of that on behalf of the respondent that was neither objected to nor disputed.

A number of authorities are cited in the respective briefs which are not specially helpful here, other than to observe they all lead to the well-settled rule, tersely stated in appellant's brief, that "waiver is a question

of intention." That is, each case is one unto itself. Tested by that rule, we conclude the trial court reached and adopted the proper findings, conclusions and judgment in this case.

Affirmed.

PARKER, C. J., HOVEY, and FULLERTON, JJ., concur.