JAMES A. DONNELLY, Appellant, v. L. A. WALCH, Appellee.

**PRINCIPAL AND AGENT:** Authority—Waiver. A principal who directs his agent to accept cash only, on making sales, waives any violation of his instructions by accepting notes of various purchasers, with full knowledge of the facts.

Headnote 1: 2 C. J. pp. 520, 719.

Headnote 1: 21 R. C. L. 934.

*Appeal from Dubuque District Court.*—P. J. NELSON, Judge.

FEBRUARY 15, 1927.

An action for an accounting. From a judgment in favor of defendant, plaintiff appeals.—*Modified, affirmed, and remanded.*

*Frantzen, Bonson & Gilloon* and *E. D. Hogan,* for appellant.

*Hurd, Lenehan, Smith & O'Connor,* for appellee.

ALBERT, J.—Appellee was engaged in the garage and automobile business, with his principal place of business at Dubuque. He had a branch at Cascade, and in 1919, appellant, Donnelly, was employed as manager of the Cascade branch, under a written contract, by the terms of which he was to receive as compensation as such manager $100 per month and 2 per cent of all moneys collected for the sale of automobiles, tractors, supplies, and accessories. In October of that year, his salary was raised to

$1.25 per month. About the 1st of January, 1920, an oral agreement was made between appellant and appellee, governing the compensation of appellant for the ensuing year. There is no dispute that his salary was to be $150 per month. Appellant's claim is that, in addition thereto, he was to have 2 per cent of all moneys collected by him from the sale of automobiles, tractors, supplies, and accessories. Appellee's contention is that appellant was to have a bonus of 1 per cent, computed upon the amount of sales. In other words, the question is whether the commission was to be 2 per cent or 1 per cent, and whether it was to be computed on the amount of cash actually banked, or actually collected, or upon the amount of sales made. There is no dispute about the compensation for the year 1919, which was settled in full on the 13th day of January, 1922, when Donnelly bought the Cascade branch from Walch. Nor is there any serious dispute that Donnelly worked for Walch as manager of the Cascade branch from the 1st of January, 1920, to the 13th of January, 1922.

We have reviewed this record with care, and the conclusion is, without setting out the testimony, that the finding of the district court was correct when he found that appellant was entitled to only 1 per cent commission on the sales. We have also computed the amount due appellant, in the light of the testimony in the case, and find that the court's computation was right, when he held that appellant was entitled to a credit of $1,859.56; and his computation as to the amount of cash paid by Walch to Donnelly on May 4 and November 3, 1921, also has our approval. The two items of June 7, 1919, and January 26, 1921, amounting to $21.61, are also found to be correct.

In the conduct of the business during the last year, about April 14, 1921, Walch instructed Donnelly in writing as follows:

"Owing to the money situation and its probable condition for the next six months, you are hereby requested, and until further notice, to get cash on all labor and parts; one half and more cash on cars and trucks. Reduce your book account to $1,000 or less, the next sixty days."

It is the claim of appellee that, after these instructions had been sent to Donnelly, he, Donnelly, took four notes, as follows: May 10, 1921, H. P. Then, a note for $500, on the sale of a roadster for $525; June 11, 1921, E. H. Kennedy, note for $175, for

the sale of car for $175; August 18, 1921, John O'Meara note for $285, on a car sold for $295; October 6th, James McGuire note for $480, taken as part purchase price on a truck for $580. It appears that, when Donnelly purchased the Cascade branch from Walch on the 13th of January, 1922, as a part of the deal Donnelly took over all book accounts, and Walch took the promissory notes, among which were the four notes above referred to. Walch claims that said notes were taken in violation of instructions, and that they are worthless, and seeks to have them charged back against Donnelly as an offset in this accounting. The question of this matter of offsetting being passed, it appears from Walch's testimony that, after he took over these notes from Donnelly, O'Meara made various payments on his note, and a renewal was taken, and part of the principal thereon and interest were paid, leaving a balance due on December 15, 1924, of $100 on that note. We are disposed to believe, under the circumstances in this case, that, so far as the O'Meara note is concerned, the appellee is not entitled to use the balance due thereon as an offset. If it be assumed that the note was, in the first instance, taken in violation of instructions, at the same time, when Walch accepted the same and proceeded to treat it as his own and to make collections thereon and to take a renewal thereof, we think it is too late for him to attempt to hold his agent for a violation of his instructions in taking the note in the first instance. *Cohen v. Robinson*, 119 Wash. 392 (205 Pac. 838); 2 Corpus Juris 719, Section 378. As to the McGuire note, Walch accepted the same, and held it for something like two years, and then took a confession of judgment from McGuire for the balance due on the note. As to the Kennedy note, Walch testifies that he had never been able to locate Kennedy, and finally concluded that he was financially irresponsible. Walch must have known about these notes at the time he accepted them from Donnelly; for, if what he says is true, that he made inquiry and tried to find the makers of the notes, and in one instance did not find any such maker, he certainly had knowledge of the facts surrounding the notes, and by accepting them and collecting part of them and trying to collect the balance, he must be said to have waived the violation of his instructions by his agent in taking the notes. The Then note was withdrawn from consideration of the court. We are of the opinion, therefore,

that, in the accounting made by the court, the three notes, to wit, the O'Meara note, the Kennedy note, and the McGuire note, should not have been charged to the agent.

One other item claimed by Walch is entitled to consideration. He claims that, in the final auditing of the books of the Cascade branch, Donnelly was short in the neighborhood of $250 in his accounts. This item, however, was considered by the court in the making of the accounting; and it was held that Walch was not entitled to claim the same. This was an adjudication against Walch on this proposition, and he having failed to appeal on this question, it is not before us for consideration.

The action of the district court in making this accounting and the results reached are affirmed in all respects, except in the amount charged in favor of Walch and against Donnelly on the three notes, to wit, the O'Meara, Kennedy, and McGuire notes, which is stricken, thus reducing the Walch charge against Donnelly to $2,448.11, from which must be deducted the amount due from Walch to Donnelly, of $1,859.56, which leaves the net amount due from Donnelly to Walch $588.55, instead of $1,501.55. The ruling of the district court will, therefore, be modified in accordance herewith, and the case may be remanded for judgment in the lower court accordingly.—*Modified, affirmed, and remanded.*

Evans, C. J., and De Graff and Morling, JJ., concur.