[No. 5531-1.   Division One.   January 15, 1979.]

THOMAS DEMPSEY, ET AL, *Respondents*, v. JOE PIGNATARO CHEVROLET, INC., *Appellant*, GENERAL MOTORS CORPORATION, *Respondent.*

*Efrem Z. Agranoff,* for appellant.

*James H. Allendoerfer, Perkins, Coie, Stone, Olsen & Williams, Paul Goodrich, J. Paul Coie,* and *Charles C. Gordon,* for respondents.

ANDERSEN, A.C.J.—
## FACTS OF CASE
An Everett automobile dealer (Joe Pignataro Chevrolet, Inc.) appeals from a judgment awarding damages to the purchasers (Mr. and Mrs. Thomas Dempsey) of a new Corvette automobile based on findings of the trial court that the dealer was responsible for the defective paint condition on the Corvette which it sold to the purchasers. The dealer also appeals from the judgment dismissing the manufacturer (General Motors Corporation, Chevrolet Motor Division) from the case. The purchasers cross–appeal from various aspects of the judgment, including dismissal of the

manufacturer and the failure of the trial court to find that there was a violation of the Consumer Protection Act, RCW 19.86, and to award purchasers damages thereunder. The manufacturer has abandoned its cross appeal.

The case was tried to the court. The trial court's findings of fact and conclusions of law explain the controversy between the parties and the manner in which the trial court resolved it. They read as follows:

### FINDINGS OF FACT

1. On or about July 19, 1974 the plaintiffs purchased a new 1974 Corvette automobile from defendant Joe Pignataro Chevrolet, Inc. in Everett, Washington. Said automobile had been manufactured by General Motors Corporation/Chevrolet Motor Division.

2. At the time of the above–referenced sale, and as part of the consideration therefor, General Motors Corporation provided the plaintiffs with certain express warranties entitled "Chevrolet New Vehicle Warranty". Said warranties covered all defective materials or workmanship found on the vehicle and obligated the defendants to repair the same at no cost to the plaintiffs for a period of 12 months from the date of purchase.

3. There was conflicting evidence as to whether the paint on the Corvette at the time of purchase was defective. The Court hereby finds that the plaintiffs' testimony was credible on this issue, and further finds that the paint on the Corvette, within 3 months after purchase, showed the following signs of being defective: numerous white pin prick spots, 2 large blisters, edges of body panels which were unpainted, large dark shadows, and loss of normal luster. These defects, or one or more of them, appeared on every part of the car's surface.

4. There was conflicting evidence as to the frequency of the plaintiffs' complaints about the defective paint to defendant Joe Pignataro Chevrolet, Inc. The Court hereby finds that the plaintiffs' testimony was credible on this issue, and further finds that specific complaints regarding the above–referenced paint defects were made to said defendant at least 3 times during the first 90 days following purchase of the vehicle.

5. During the period that the above–referenced paint defects appeared on the vehicle's surface, the plaintiffs were not abusing the vehicle or attempting to have it

repainted in any manner, except as is provided in paragraph 6 below.

6. During the 3-month period immediately following the purchase of the car, defendant Joe Pignataro Chevrolet, Inc. attempted to remedy paint defects appearing on the surface of the car on at least 3 occasions, and in the course of such attempts created substantial problems with a major portion [of] the car's paint surface, directly resulting in a necessity for the car to be stripped of all paint products and repainted in its entirety.

7. During the period of the first 3 months following the purchase of the vehicle, the plaintiffs requested defendant Joe Pignataro Chevrolet, Inc. to repaint the entire vehicle pursuant to the terms of the express warranty. Said defendant failed and refused to do so.

8. In September, 1975, following an accident involving body damage to the right side of the vehicle, the plaintiffs asked an independent paint shop to totally repaint the vehicle. This paint shop was unable to successfully repaint the vehicle by reason of the pre-existing defective condition of the vehicle's surface which resulted from the work done by defendant Joe Pignataro, Inc. The plaintiffs immediately complained of this problem to the zone office of General Motors Corporation. That office advised the plaintiffs to contact Joe Pignataro Chevrolet, Inc. The plaintiffs, through their attorney, contacted Joe Pignataro Chevrolet, Inc. but received no offer to repaint the vehicle or otherwise satisfy the complaint.

9. The plaintiffs incurred damages in the amount of $469.64 which is the amount paid to the independent paint shop for preparation and attempted repainting of the vehicle, and which is a reasonable charge for such services and materials.

10. The plaintiffs incurred damages in the amount of $2,000.00 which is the reasonable cost of stripping the vehicle of its present paint and repainting it to its original condition, taking into account that this is a specialty vehicle and its appearance is of special importance.

11. The plaintiffs have incurred damages in the amount of $200.00 which is the reasonable rental value of a replacement vehicle during the period of one month that it would normally take to repaint the Corvette. The plaintiffs have failed to sustain their burden of showing

388

they are entitled to compensation for loss of use of the Corvette for any period longer than one month.

12. The plaintiffs and defendant Joe Pignataro Chevrolet, Inc. have failed to establish that the paint on the vehicle was in its defective condition described above on June 24, 1974 when the vehicle was delivered to Joe Pignataro Chevrolet, Inc., or that any of the above-stated damages resulted from acts or omissions on the part of General Motors Corporation/Chevrolet Motor Division. At no time did General Motors Corporation/Chevrolet Motor Division fail or refuse to honor a warranty claim on this vehicle which had been submitted to it by Joe Pignataro Chevrolet, Inc. General Motors Corporation/Chevrolet Motor Division did not breach any warranties to the plaintiffs or to Joe Pignataro Chevrolet, Inc.

13. The plaintiffs have failed to prove that any acts, omissions, statements or representations by agents or employees of Joe Pignataro Chevrolet, Inc. at the time of the sale of the vehicle to the plaintiffs on July 19, 1974, unfairly or deceitfully induced the plaintiffs to purchase the vehicle. It has not been established that the vehicle's paint was defective at the time of said sale.

From the foregoing Findings of Fact, the Court hereby enters the following:

CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this cause of action.

2. By reason of the defective materials and/or negligent workmanship of agents or employees of Joe Pignataro Chevrolet, Inc. in the course of repainting the plaintiffs' vehicle subsequent to the date of purchase on July 19, 1974, and by reason of defendant Joe Pignataro Chevrolet, Inc.'s failure and refusal to totally repaint the vehicle, said defendant has breached its warranties to the plaintiffs.

3. General Motors Corporation/Chevrolet Motor Division is not liable to the plaintiffs for the above-stated breaches by reason of the fact that the vehicle was not in a defective condition on the date of delivery to Joe Pignataro Chevrolet, Inc. General Motors Corporation/Chevrolet Motor Division is entitled to dismissal with prejudice of the plaintiffs' claims against it.

4. The plaintiffs are entitled to judgment against Joe Pignataro Chevrolet, Inc. for the following amounts:

a. $200.00 for loss of use of the vehicle for a period of one month.

b. $469.64 for the cost of preparing the vehicle's surface and attempting to paint the same by an independent paint shop.

c. $2,000.00 for the cost of stripping the vehicle of all paint and repainting the same to its original condition.

d. The plaintiffs' taxable costs and disbursements incurred herein.

5. The plaintiffs' first cause of action has failed to establish the applicability of the Consumer Protection Act for the reason that the plaintiffs have failed to prove that they were unfairly or deceitfully induced to purchase the vehicle by the acts, omissions, statements or representations of the defendants. The relief sought by the plaintiffs under said Consumer Protection Act should be denied.

6. The cross–complaint of Joe Pignataro Chevrolet, Inc. against General Motors Corporation should be denied with prejudice for the reason that no liability has been found on the part of General Motors Corporation. The cross–complaint of General Motors Corporation against Joe Pignataro Chevrolet, Inc. should also be denied with prejudice.

The numerous errors assigned by the dealer on its appeal, and by the purchasers on their cross appeal, present three basic issues.

## ISSUES

ISSUE ONE. Are the trial court's findings of fact supported by substantial evidence?

ISSUE TWO. Are only acts and practices designed to effect a sale within the protection of the Consumer Protection Act, RCW 19.86?

ISSUE THREE. Did the trial court err in concluding that the purchasers were not entitled to any relief under the Consumer Protection Act?

## DECISION

ISSUE ONE.

CONCLUSION. Conflicting evidence in the record supports the trial court's findings which are excepted to by the automobile dealer on its appeal and by the purchasers on their cross appeal. All of the trial court's findings will therefore be treated as verities on this appeal.

■ As we have frequently held, factual disputes must be resolved by the trial court. Const. art. 4, § 6 vests that power exclusively in the trial court. The power of this court is appellate only and in factual matters is limited to ascertaining whether or not the findings are supported by substantial evidence. *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 959, 350 P.2d 1003, 353 P.2d 671 (1960); *Charles Pankow, Inc. v. Holman Properties, Inc.*, 13 Wn. App. 537, 542, 536 P.2d 28 (1975). Where the evidence is conflicting, as here, the trier of the fact may believe entirely the testimony of some of the witnesses and disbelieve entirely the testimony of others. *Hughes v. Stusser*, 68 Wn.2d 707, 709, 415 P.2d 89 (1966). Furthermore, the trier of the fact may draw from the evidence all inferences fairly deducible therefrom. 75 Am. Jur. 2d *Trial* § 351 (1974).

We have carefully reviewed the entire record presented and conclude that there was substantial evidence to support the trial court's detailed findings of fact. We therefore consider all of such findings to be verities for the purpose of this appeal.

The trial court did not predicate the automobile dealer's liability on the condition of the Corvette at the time it was sold to the purchasers, but on the defective condition of the vehicle's surface resulting from the work done by the automobile dealer subsequent to the sale of the vehicle. Findings of fact No. 6 and No. 8; conclusion of law No. 2.

All of the errors assigned by the dealer are either entirely factual or, though legal in form, are ultimately determined by the facts found. These include such issues as the applicability of the manufacturer's new car warranty, the indemnity claim against the manufacturer and the amount of

damages established. Accepting the findings as verities, we hold that the purchasers' judgment against the automobile dealer will stand. *Berg v. Stromme,* 79 Wn.2d 184, 189, 484 P.2d 380 (1971); *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wn. App. 39; 43, 554 P.2d 349 (1976). The judgment dismissing General Motors was also proper in view of the factual determinations made by the trial court.

In connection with the purchasers' cross appeal, the first four of their five assignments of error are also entirely factual or are otherwise determined on the basis of the facts found. Accepting the trial court's findings as verities, as we do, those four assignments are not well taken.

ISSUE TWO.

CONCLUSION. The provisions of the Consumer Protection Act, RCW 19.86, are not limited to activities intended to induce a buyer to purchase goods or services, but also apply to the post–sale conduct of a trade or commerce.

■ On the purchasers' cross appeal, they assign error to the trial court's conclusion of law No. 5 above, wherein the trial court concluded that the Consumer Protection Act was not applicable *"for the reason that* the plaintiffs have failed to prove that they were unfairly or deceitfully *induced to purchase the vehicle* by the acts, omissions, statements or representations of the defendants." (Italics ours.) Conclusion of law No. 5. *See also* finding of fact No. 13 above.

At the time this case was tried, there was indeed language in *Johnston v. Beneficial Management Corp. of America,* 85 Wn.2d 637, 538 P.2d 510 (1975), to the effect that only acts designed to effect a sale are within the Consumer Protection Act, RCW 19.86. The State Supreme Court recently, however, modified that holding in *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 359–61, 581 P.2d 1349 (1978), wherein it held that the Consumer Protection Act is not so limited and does apply to the post–sale conduct of a trade or commerce.

The purchasers' claim to the effect that conclusion of law No. 5, above, is based on an erroneous predicate is therefore well taken.

ISSUE THREE.

CONCLUSION. Whether the purchasers are or are not entitled to recover damages from the dealer on the basis of the Consumer Protection Act requires the finding of additional facts by the trial court as the trier of fact.

As discussed above, the trial court's denial of the purchasers' recovery under the Consumer Protection Act was based only on its decision that there were no post–sale acts or practices, a criterion which is no longer determinative. Furthermore, the only deception revealed by the trial court's findings and conclusions relates to the transaction between the dealer and the purchasers. They do not show by themselves, without more, that the public interest in the transaction is specifically and substantially affected. *Lightfoot v. MacDonald,* 86 Wn.2d 331, 334, 544 P.2d 88 (1976); *Salois v. Mutual of Omaha Ins. Co., supra* at 361. For example, there is no showing that the dealer's conduct was such that it could mislead or deceive a substantial segment of the consuming public, that other customers had been similarly injured or the like. *See Federal Trade Comm'n v. Algoma Lumber Co.,* 291 U.S. 67, 72–73, 78 L. Ed. 655, 54 S. Ct. 315 (1934).

█ It is, however, possible that there was a "per se" violation of the Consumer Protection Act in this case. Under the per se doctrine, an infringement of a statute designed to protect the public is considered inimical to the public interest and, therefore, on that basis is by itself an unfair or deceptive practice condemned by the act. *State v. Readers' Digest Ass'n, Inc.,* 81 Wn.2d 259, 270, 501 P.2d 290 (1972); *Salois v. Mutual of Omaha Ins. Co., supra* at 358–59.

In the present case, the purchasers argue that the dealer's conduct violated provisions of the unfair motor vehicle business practices law, RCW 46.70. Whether or not there was a per se violation due to a violation of that law

cannot be determined from the findings of fact and conclusions of law which were entered. Therefore, that is an issue which we cannot resolve on this appeal since it is an issue of fact which must be determined by the trial court.

For the plaintiffs to recover for a per se violation of the Consumer Protection Act, they must prove: (1) the existence of a pertinent statute; (2) its violation; (3) that such violation was the proximate cause of damages sustained; and (4) that they were within the class of people the statute sought to protect. *Cook v. Seidenverg,* 36 Wn.2d 256, 258–59, 217 P.2d 799 (1950); *Short v. Hoge,* 58 Wn.2d 50, 54, 360 P.2d 565 (1961).

The parties in this case fully presented their respective cases to the trial court and then rested. On the purchasers' cross appeal, we reverse the trial court's dismissal of the purchasers' claim against the automobile dealer, Joe Pignataro Chevrolet, Inc., under the Consumer Protection Act and remand the case to the trial court with instructions: (a) to enter additional findings as to whether or not the purchasers proved that said dealer committed a per se violation of the Consumer Protection Act, RCW 19.86; and (b) if so, what additional damages the purchasers proved they were entitled to recover from the dealer on that basis. *See Hatahley v. United States,* 351 U.S. 173, 182, 100 L. Ed. 1065, 76 S. Ct. 745 (1956); *Gnash v. Saari,* 44 Wn.2d 312, 319, 267 P.2d 674 (1954); *Wold v. Wold,* 7 Wn. App. 872, 876–78, 503 P.2d 118 (1972). In all other respects, the judgment against the automobile dealer and dismissal of the manufacturer is affirmed.

JAMES and RINGOLD, JJ., concur.