**PURDY MOBILE HOMES, INC., a corporation, Plaintiff,**

v.

**CHAMPION HOME BUILDERS CO., a corporation, Tamarack Homes, a corporation, Defendants.**

No. C–74–31.

United States District Court, E. D. Washington.

April 10, 1981.

Schimanski & Leeds, Spokane, Wash., for plaintiff.

Paine, Lowe, Coffin, Hamblen & Brooke, Spokane, Wash., for defendants.

## MEMORANDUM DECISION

ROBERT J. McNICHOLS, Chief Judge.

This diversity action for alleged breach of an oral contract is before the Court on defendant Champion Home Builders' Motion to Dismiss for failure to state a claim.

This action arises out of an alleged oral contract where the defendant, a mobile home manufacturer, allegedly agreed to grant the plaintiff, a mobile home retailer, an exclusive dealership for the sale of "Tamarack" mobile homes. While a February 19, 1968 letter represents a confirmation of the oral grant of the right to sell the "Tamarack", it did not mention the grant of an exclusive dealership. The oral contract was allegedly modified in March, 1970 when the defendant opened a dealership in St. Maries, Idaho. Although additional dealerships were opened in Colville, Washington and Bonners Ferry, Idaho in 1971, the plaintiff did not become aware of the dealerships until potential customers mentioned the dealerships to him. There is nothing in the record to indicate that the defendant, prior to or after the establishment of the Colville and Bonners Ferry dealerships, gave the plaintiff unequivocal, definite and final notice of any proposal to modify the alleged exclusive dealership agreement. The plaintiff filed this action on February 14, 1974. Over a year later, the defendant, by a February 19, 1975 letter, revoked the plaintiff's right to sell the "Tamarack and offered to repurchase any Tamarack parts, equipment or tools." The revocation was effective on May 26, 1975.

The plaintiff seeks to recover on the basis of common-law breach of contract and one or more of the following statutory grounds:

1. Washington Franchise Investment Protection Act, R.C.W. 19.100.010;
2. Washington Unfair Motor Vehicle Business Practices Act, R.C.W. 46.70.-180(10)(b);

3. Washington Consumer Protection Act
 a. Monopoly Section—R.C.W. 19.86.-040
 b. Unfair Competition & Practices Section, R.C.W. 19.86.020

The defendant contends that each statutory claim must be dismissed for failure to state a claim and/or because the claims are barred by res judicata. It is argued that the common-law claim must be dismissed because: (1) there was no valid contract, (2) the plaintiff is estopped from asserting such a contract, (3) the plaintiff's claim is barred by the statute of limitations and the statute of frauds.

Since the parties have agreed that the plaintiff cannot prevail under the Washington Franchise Investment Protection Act, R.C.W. 19.100 or the Monopoly Section of the Washington Consumer Protection Act, R.C.W. 19.86.040, the plaintiff's claims under those statutes will be dismissed with prejudice.

 Since the parties have presented, and the Court has considered matters outside the pleadings on the remainder of the claims, the remainder of defendant Champion's Motion to Dismiss will be treated as a Motion for Summary Judgment. Fed.R. Civ.P. 12(b), *Dorado v. Kerr,* 454 F.2d 892 (CA9), *cert. denied,* 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972). As such, defendant, as the moving party, has the burden of demonstrating the absence of a genuine issue of fact which may affect the outcome of the litigation. *Beltz Travel Service v. International Air Transport Association,* 620 F.2d 1360 (CA9 1980). The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the plaintiff. *Id.* These standards are applied more stringently and summary judgments are granted more warily where as here good faith, motive or intent are at issue. *Garter-Bare Co. v. Munsingwear, Inc.,* 622 F.2d 416 (CA9 1980) [Fraud]; *Hotel & Restaurant Employees and Bartenders International Union v. Rollison,* 615 F.2d 788 (CA9 1980) [Good faith in imposition of a trusteeship].

## WASHINGTON UNFAIR MOTOR VEHICLE BUSINESS PRACTICES ACT

The defendant contends that the plaintiff has failed to state a claim because: (1) the dismissal of the plaintiff's Federal Automobile Dealer Franchise Act, 15 U.S.C. § 1221 et seq., triggered a statutory bar to a similar state claim, R.C.W. 46.70.190, *Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59 (CA9 1973), (2) the statute does not apply because the plaintiff is not a franchisee and (3) the subsection at issue has not been violated.

Since I find as a matter of law that the statute has not been violated, I need not reach the first two contentions.

The statute, R.C.W. 46.70.180(10)(b) provides in pertinent part that it is unlawful to:

(b) *Cancel,* or, fail to renew *the franchise or selling agreement of any vehicle dealer* doing business in this state without fairly compensating the dealer at a fair going business value for his capital investment which shall include but not be limited to tools, equipment, and parts inventory, possessed by the dealer on the day he is notified of such cancellation or termination and which are still within the dealer's possession on the day the cancellation or termination is effective, if: (1) *The capital investment shall have been entered into with reasonable and prudent business judgment for the purpose of fulfilling the franchise; and* (2) *Said cancellation or nonrenewal was not done in good faith. . . .* [Emphasis added]

R.C.W. 46.70.180(10)(b).

Assuming that the statute applies, the defendant is liable if (1) he did not act in good faith when he cancelled the agreement and (2) he failed to fairly compensate the dealer for any capital investment entered into with reasonable and prudent business judgment for the purpose of fulfilling the agreement.

The statute defines good faith as:

[T]he duty of each party to any franchise to act in a fair and equitable manner towards each other, so as to guarantee one party freedom from coercion, intimi-

dation or threats of coercion or intimidation from the other party:

R.C.W. 46.70.180(10)(b).

 The plaintiff has based its allegation of lack of good faith on two grounds: (1) cancellation of the agreement and (2) failure to offer to repurchase more than the "Tamarack parts, equipment or tools." These grounds do not constitute the lack of good faith contemplated by the statute. The mere act of cancellation does not amount to a lack of good faith under the statute. The cancellation must be linked to an allegation of coercion or intimidation or the threat of coercion and intimidation.

While all the evidence and all the reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party, there is nothing in this six-year old record to suggest that the defendants cancelled the agreement in an effort to coerce or intimidate or threaten to coerce or intimidate the plaintiff. In fact, the evidence is to the contrary. Although the plaintiff filed suit in February, 1974, the defendant did not cancel the agreement until over a year later in May, 1975.

Moreover, the defendant made an effort to avoid any potential liability under the statute when it offered to repurchase all "Tamarack parts, equipment or tools." Instead of informally resolving the matter, the plaintiff filed a supplemental complaint alleging a violation of the very statute that the defendant sought to satisfy. Thus, if there was a hint of bad faith in the air, it arose from the plaintiff's camp; not the defendant's camp.

Since there is no evidence or reasonable inference of a lack of good faith within the meaning of the statute, the plaintiff has failed to state a claim under the Washington Unfair Motor Vehicle Business Practices Act, R.C.W. 46.70.180(10)(b) and the defendant is entitled to judgment in its favor.

## CONSUMER PROTECTION ACT

 Under the Washington Consumer Protection Act, (CPA), a private party who sustains an injury as a result of unfair or deceptive acts or practices may sue the perpetrator. R.C.W. 19.86.090. To prevail, the plaintiff must demonstrate that the acts: (1) are within the sphere of trade or commerce; (2) are unfair or deceptive; and (3) impact the public interest.

 The plaintiff alleges seven unfair methods or deceptive acts which may be classified into three separate groups: 1) Discrimination; 2) Improper Branding Practices; and 3) A per se violation of the CPA through a violation of the Unfair Motor Vehicle Business Practices Act, R.C.W. 46.70.180(10)(b). Assuming for purposes of this motion that the methods or acts constituted unfair methods or deceptive acts, the plaintiff has failed to state a claim for which relief may be granted because: (1) the alleged acts and practices do not impact on the public interest, (2) there has been no per se violation of a statute, (3) the alleged per se violation and the bulk of the alleged acts and practices are exempted from coverage of the act, (4) the alleged per se violation and arguably the acts and practices are excluded from the coverage of the CPA and, (5) it would be inappropriate to apply the CPA to protect an exclusive dealership.

 The CPA does not provide an additional remedy in a private action for breach of contract. *Lightfoot v. MacDonald*, 86 Wash.2d 331, 333, 544 P.2d 88 (1976). The defendants' acts must affect the public generally. *Id.* An act affects a public interest when

> [T]he proof establishes that (1) the defendant by unfair or deceptive acts or practices in the conduct of trade or commerce has induced the plaintiff to act or refrain from acting; (2) the plaintiff suffers damage brought about by such action or failure to act; and (3) the defendant's deceptive acts or practices have the potential for repetition.

*Anhold v. Daniels*, 94 Wash.2d 40, 46, 614 P.2d 184 (1980).

Unlike the plaintiff in *Anhold*, Mr. Purdy, despite five years of opportunity to discover, plead and prove by affidavit the necessary facts, has failed to demonstrate that

the defendants' alleged unfair or deceptive acts have the potential for repetition. Plaintiff's contention that the defendants violated the plaintiff's territory at various times misses the point. The Washington courts' requirement that the acts affect the public generally, indicates that the courts are concerned with the potential for repetitive acts against separate consumers and that the courts are not concerned with repetitive breaches of a contract between two private parties.

In short, the plaintiff has established nothing more than an alleged breach of a private contract. It has not shown that the public interest has or will be specifically and substantially affected by the alleged branding practices and discriminatory actions of the defendant. *Dempsey v. Pignataro Chevrolet*, 22 Wash.App. 384, 392, 589 P.2d 1265 (1979).

Although a per se violation of a statute *designed to protect the public* may in itself affect the public interest, *id.*, the statutory subsection which was allegedly violated in this action, R.C.W. 46.70.180(10)(b), was not designed to protect the public. The subsection at issue in this case was designed to regulate the relationship between a vehicle manufacturer and his dealers. Moreover, as has already been noted, the plaintiff has failed to state a cause of action under the Unfair Motor Vehicle Business Practices Act.

Even if there had been a per se violation, the alleged per se violation in this case is not within the Consumer Protection Act. While the *Dempsey* court held that a violation of the Unfair Motor Vehicle Business Practices Act may provide a basis for a per se violation under the CPA, the court did not determine whether a defendant acting pursuant to the alleged subsection, R.C.W. 46.70.180(10)(b), would be *exempt* from the CPA. The court also did not determine whether the provisions of the more specific Motor Vehicle Act *excluded* the provisions of the more general CPA.

The *exemption* issue in this case centers on the allegations of Discrimination and Unfair Branding Practices as well as on the allegations of a per se violation of R.C.W. 46.70.180. Although a plaintiff may be able to prove a violation of the CPA, the defendant may be *exempted* from liability if it can demonstrate that:

1. Its pre-1974 "actions or transactions were permitted, prohibited or regulated under laws administered . . . by any other regulatory body or officer acting under statutory authority of this state or the United States." R.C.W. 19.86.170 as it existed in 1974, or

2. Its post-1974 actions or transactions were "permitted by any other regulatory body or officer acting under statutory authority of this state or the United States." R.C.W. 19.86.170 as amended, effective July 24, 1974.

These divergent approaches, which are a result of the 1974 amendment to R.C.W. 19.86.170, share one common additional requirement. The regulatory body must be more than a monitor of "the business practices of those who freely enter its domain." *State v. Reader's Digest Association*, 81 Wash.2d 259, 279, 501 P.2d 290 (1972). The officer or agency must have control over the defendant's entry into the regulatory body's area of concern. *See Dick v. Attorney General*, 83 Wash.2d 684, 521 P.2d 702 (1974).

As a mobile home manufacturer, the defendant is a vehicle dealer. R.C.W. 46.70.011(3). Thus, the defendant's entry into and activity in the mobile home business in Washington is subject to the control of the Director of Licensing. R.C.W. 46.70.021. Prior to the issuance of a license, the mobile home manufacturer must file a substantial security bond whose form must be approved by the state Attorney General and it must agree to conduct its business in conformity with the Unfair Motor Vehicle Business Practices Act. R.C.W. 46.70.075. The Act sets forth a variety of specific unlawful acts and practices. R.C.W. 46.70.180. Both a private litigant and the attorney general are authorized to bring suit to enforce the act, R.C.W. 46.70.190, R.C.W. 46.70.220, to the end that the practices of the commission of fraud or misrepresentation in the sale,

barter or disposition of vehicles in this state may be prohibited and prevented. R.C.W. 46.70.900. The goal of the act is to exclude "irresponsible, unreliable, or dishonest persons" from the business and to encourage reliable persons to engage in the vehicle business. R.C.W. 46.70.900.

In short, the defendant's entry into and activity in the vehicle business is controlled and regulated by a regulatory officer under R.C.W. 46.70.

■ Since the defendant's pre-1974 activity was *regulated* by the Director of Licensing, the defendant's pre-1974 activity is *exempt* from the CPA. Although any pre-July 24, 1974 acts of discrimination and unfair branding are exempted from coverage, the post-July 24, 1974 acts of discrimination and unfair branding are not *exempted* from the coverage of the CPA.

The only post-July 24, 1974 acts that would be exempted are those that are *permitted* by the regulatory body. R.C.W. 19.-86.170. Here, the Motor Vehicle Act permits the cancellation or termination of a dealership if it is done in compliance with R.C.W. 46.70.180. Therefore, the alleged per se violation of the CPA is *exempt* from the coverage of the CPA. The only acts which are not exempt are those acts of discrimination and unfair branding which occurred after July 24, 1974.

■ In addition to the *exemption* of the bulk of the alleged acts, the per se violation and arguably the other alleged acts are *excluded* from the coverage of the Consumer Protection Act, where, as here, the CPA as the general law and the Unfair Motor Vehicle Business Practices Act as the specific law are concurrent. In such a situation, the special law applies to the subject matter contemplated by it to the exclusion of the general law. *Airway Heights v. Schroeder*, 53 Wash.2d 625, 335 P.2d 578 (1959). As noted in a Comment on the relationship of the CPA and the Motor Vehicle Act, "the evidence weighs more heavily in favor of construing the Unfair Motor Vehicle Business Practices Act to be the exclusive remedy for violations of conduct which it has declared to be unlawful." Comment, *On the Road to Recovery With the Washington Vehicle Consumer*, 10 Gonz. L.Rev. 577, 592 (1975).

With regard to the Consumer Protection issue as a whole, the plaintiff's reliance on *Ivan's Tire Service, Inc. v. Goodyear Tire*, 10 Wash.App. 110, 517 P.2d 229 (1973), is misplaced because the case is distinguishable. Unlike the defendant in *Ivan's Tire Service*, the defendant in this case is not in direct or indirect competition with the plaintiff. Also, there is no indication that the defendant intended to destroy the plaintiff's business.

Finally, since the "touchstone of the nation's economy has been competition," *Ivan's Tire Service, Inc., supra*, at 122, 517 P.2d 229, and since the purpose of the CPA is to protect the public and to foster fair and honest competition, R.C.W. 19.86.920, I believe that it would be wrong to allow a retailer to use the CPA to preclude competition through the protection and preservation of an alleged exclusive dealership. Such an approach would be against the public interest because it would deny consumers the benefit of competition in the market place.

In short, the plaintiff has failed to demonstrate that it is entitled to recover under the Consumer Protection Act.

## COMMON LAW BREACH OF THE ORAL CONTRACT

■ The plaintiff contends that the defendant breached their oral contract:

1. By the creation of new dealers, directly and indirectly, in the exclusive area granted to the plaintiff corporation, and by sale of its merchandise to said dealers.
2. By unfair methods of competition, including "multiple branding," inverse passing off, and indirect sales in plaintiff's exclusive territory.

Complaint, para. V.

The defendant has set forth four reasons for this Court to conclude that the plaintiff's common-law breach of contract claim does not state a cause of action for which

relief may be granted: 1) There was no enforceable contract or if there was a contract, it was terminable at will; 2) Statute of Limitations; 3) Estoppel; and 4) Statute of Frauds.

In considering the defendant's arguments, the evidence of this case and all reasonable inferences therefrom must be viewed in the light most favorable to the plaintiff. *Beltz Travel Service v. International Air Transport Association*, 620 F.2d 1360 (CA9 1980).

### ENFORCEABLE CONTRACT

In light of the foregoing test, the affidavits and other documents on file, and the parties' conduct, it is apparent that there was a contract and that there are genuine issues of material fact as to the scope and extent of the contract. Although the contract was terminable at will, the Unfair Motor Vehicle Business Practices Act contemplates a specific form of reasonable notice. Since such notice was not provided until February 18, 1975, it appears, at this juncture that the contract to sell the "Tamarack" mobile homes was terminated in 1975. While there is no dispute as to the effect of the February 19, 1975 letter, there is a substantial factual dispute over the characterization of the activity surrounding the establishment of the St. Maries dealership. In light of this dispute, I cannot say that the St. Maries activity resulted in a termination as opposed to a modification of the alleged exclusive dealership.

### STATUTE OF LIMITATIONS

Since I cannot, at this juncture, find as a matter of law that the St. Maries activity represented a breach or termination as opposed to a modification of the alleged exclusive sales contract, I cannot say that the contract was breached and the statute of limitations had begun to run on March 19, 1970. Since the first undisputed breach occurred in March, 1971 when the defendant approved a dealership in Colville, Washington, the plaintiff has, at this juncture, satisfied the three-year statute of limitations, R.C.W. 4.16.080, by filing this action in February, 1974.

### EQUITABLE ESTOPPEL

■ The defendant has failed to demonstrate that the doctrine of equitable estoppel should apply in this case. Equitable estoppel applies when the defendant, aside from injury, demonstrates that a (1) plaintiff has made an admission, statement or act which is inconsistent with its later claim; and (2) the defendant in reasonable reliance acted upon the plaintiff's admission, statement or act. *Liebergesell v. Evans*, 93 Wash.2d 881, 613 P.2d 1170 (1980). The reasonableness of the defendant's reliance presents a question of fact. *See Marsh v. General Adjustment Bureau*, 22 Wash.App. 933, 592 P.2d 676 (1979).

■ Mr. Purdy's affidavit, dated May 30, 1980, indicates that upon his inadvertent discovery of the Colville/Bonners Ferry dealerships, he objected to the establishment of the dealerships. Thus, issues of material fact exist with respect to whether Mr. Purdy objected to the new dealerships and whether it was reasonable for Champion to rely on Mr. Purdy's actions or lack of action. Moreover, since it is the well settled rule in Washington that waiver presents a question of intention, *Cohen v. Robinson*, 119 Wash. 392, 205 P. 838 (1922), any factual dispute over whether Mr. Purdy failed to object, and thus waived his rights, makes summary judgment on the basis of estoppel particularly inappropriate.

The defendant's reliance on *Mall Tool v. Far West*, 45 Wash.2d 158, 273 P.2d 652 (1954), is misplaced. While the agreement in this case, like the one in *Mall Tool v. Far West, supra*, was terminable at will, the defendant in this case only *proposed* one modification, the St. Maries dealership. The plaintiff agreed to that modification. While *Mall Tool* held that a dealer who acquiesced in the proposed modification of an exclusive dealership contract which was terminable at will was bound by his acquiescence, the court also held that the manufacturer must give unequivocal, definite and final notice of the proposal before the dealer may be deemed to have acquiesced.

*Mall Tool v. Far West, supra.* Since the unannounced opening of the Colville/Bonners Ferry dealerships did not constitute a proposal, the plaintiff in this case did not receive unequivocal, definite and final notice of the manufacturer's intent to terminate the alleged exclusive dealership. Until such notice can be established, it cannot be said that the plaintiff had a duty to file a written protest. In short, the quality of the defendant's notice to the plaintiff is no better than the quality of the plaintiff's protest to the defendant.

Since the defendant has failed to demonstrate an absence of genuine issues with regard to the traditional elements of equitable estoppel and since the defendant has also failed to demonstrate that it gave the plaintiff unequivocal, definite and final notice of an intent to terminate the alleged exclusive dealership, the plaintiff is not entitled to summary judgment on the basis of equitable estoppel.

## STATUTE OF FRAUDS

Finally, the defendant contends that the alleged oral exclusive dealership contract is barred by the Statute of Frauds. The statute provides that agreements not to be performed within one year from the making thereof must be in writing. R.C.W. 19.36.-010(1). It is my task to determine from the surrounding circumstances the terms of the contract and to determine whether, by those terms, the contract must of necessity require more than one year to perform. *Dudley v. Boise Cascade Corporation,* 76 Wash.2d 466, 457 P.2d 586 (1969).

Since, in this case, the oral contract was for an indefinite period of time and, as the defendant urges, it was terminable at will, the Statute of Frauds does not apply. *Sargent v. Drew-English Inc.,* 12 Wash.2d 320, 121 P.2d 373 (1942). Any subjective interpretation by Mr. Purdy that the contract could not be performed within one year of the making thereof is unpersuasive as it falls far short of establishing any finite contract for a period of more than one year. *See Lasser v. Grunbaum Brothers Furniture Company,* 46 Wash.2d 408, 281 P.2d 832 (1955). Whatever the plaintiff may have understood or expected, the agreement was of an indefinite term and was terminable at will. The fact that it might be highly improbable that the contract could be performed in one year or the fact that the contract was not performed within one year does not require a finding that the contract was within the Statute of Frauds. *Dudley v. Boise Cascade Corporation, supra.*

Having found, at this juncture, that the contract was not within the Statute of Frauds, this action is not barred by the statute. Even if it were within the statute, the plaintiff should, under the facts of this case, have the opportunity at trial to prove that it can avoid the Statute of Frauds under Section 217A of the Restatement (Second) of Contracts which was recently adopted by the Washington courts. *Klinke v. Famous Fried Chicken,* 24 Wash.App. 202, 600 P.2d 1034 (1979).

## SUMMARY

As the plaintiff has recognized, the defendant is entitled to the dismissal of the plaintiff's claims under the Washington Franchise Investment Protection Act, R.C.W. 19.100.010 and under the monopoly section of the Consumer Protection Act, R.C.W. 19.86.040. Viewing the evidence in the light most favorable to the plaintiff, I find as a matter of law that the defendant is entitled to judgment in its favor on the plaintiff's claims under the Washington Unfair Motor Vehicle Business Practices Act, R.C.W. 46.70.180(10)(b) and the Unfair Competition & Practices Section of the Consumer Protection Act, R.C.W. 19.86.020. However, due to the existence of genuine issues of material fact, the defendant's motion on the plaintiff's common law breach of contract claim is denied. Therefore,

IT IS ORDERED that the plaintiff's claims under the Washington Franchise Investment Protection Act and the Monopoly Section of the Consumer Protection Act are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment on the plaintiff's claims under the Washington Unfair Motor Vehicle Business Practices Act and the Unfair Competition & Practices Section of the Consumer Protection Act is GRANTED and judgment shall be entered in favor of the defendant on those two claims.

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment on the plaintiff's common-law breach of contract claim is DENIED.

The Clerk shall enter judgment accordingly.